UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ONLINE PUBLICATION ONLY

-----------------------------------------------------------------x

ERSILIA M. GALLO,

                       Plaintiff,

MEMORANDUM AND ORDER

       -against-

10-CV-1918 (JG)

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                       Defendant.
-----------------------------------------------------------------x

A P P E A R A N C E S:

    MAX D. LEIFER
        214 Sullivan Street, Suite 3-C
        New York, NY 10012
        *Attorney for Plaintiff*

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:   Seth D. Eichenholtz
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Ersilia Gallo seeks review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner of Social Security's denial of her application for a period of disability and disability insurance benefits. The parties have cross-moved for judgment on the pleadings. I heard oral argument on September 30, 2010. Because the Commissioner's decision is not supported by substantial evidence in the record, I deny the Commissioner's motion, grant Gallo's motion and remand for further proceedings.

BACKGROUND

On August 6, 2007, Gallo filed an application for disability and disability insurance benefits, alleging that she had been disabled since July 1, 2002.[1] Her claim was denied on December 14, 2007. Gallo requested and received a hearing before an administrative law judge ("ALJ"), at which she appeared and testified on March 2, 2009. Olan Dodd, an impartial vocational expert, also testified at the hearing. The hearing was held via videoconference; Gallo was in Scranton, Pennsylvania, while the ALJ and Dodd were in Charleston, West Virginia.

On April 15, 2009, the ALJ concluded that Gallo was not disabled within the meaning of the Social Security Act on the ground that she retained the residual functional capacity to perform limited sedentary work as defined in 20 C.F.R. § 416.967(a). The Appeals Council denied Gallo's request for review on February 26, 2010, making the ALJ's adverse decision the final decision of the Commissioner. *See DeChirico v. Callahan*, 134 F.3d 1177, 1179 (2d Cir. 1998).

A.  *The Plaintiff's Statements and Testimony*

Gallo was born in 1955 and has a high school diploma. She worked as an installment loan investigator from 1980 to 1990 and thereafter as an administrative assistant until July 2002. She has lived the majority of her life in Pennsylvania, but she currently lives with friends in New York City. Gallo is divorced and has two grown children.

Gallo suffers from severe back and neck pain dating from a slip-and-fall she sustained at the age of 28. Her pain worsened throughout the 1990s and became debilitating in the early 2000s. She ceased working by mid-2002 because of her pain.

---

1. Gallo filed a previous application for a period of disability and disability insurance benefits on August 23, 2006, which was denied on January 22, 2007. She did not appeal that denial.

Gallo complains of lower-back pain radiating down her legs, particularly on her left side, as well as numbness and tingling down her left leg and side and weakness in her extremities (including legs and hands). Since her pain became debilitating her weight has fluctuated wildly, and has dropped as low as 92 pounds. She testified that she is unable to sit or stand for more than 15 minutes at a time, and must lie down frequently (approximately six times during the course of an eight-hour work day).

Gallo testified that her pain makes her unable to do many activities she had previously enjoyed, such as crafting. She has trouble with the daily activities of life, such as cooking and hairdressing. Her social activity is nearly nonexistent. She described being incapable of focusing on tasks for sustained periods of time. She has difficulty following written or oral instructions, and cannot lift weights over ten pounds.

B.   *Medical Evidence*

Gallo has been diagnosed with scoliosis, fibromyalgia, degenerative disc disease, several disc herniations, lumbar radiculopathy, degenerative disc disease of the cervical spine, cervical muscle pain and severe lumbar spinal stenosis. She has also been treated for anxiety, an inability to focus for sustained periods of time or to follow written instructions and periods of depression and anger, all of which she says are due to the pain in her back and extremities.

Dr. Raj Katara, Gallo's treating physician, saw her regularly between January 12, 2007, and October 25, 2007. An MRI taken on January 12, 2007 showed marked degeneration at L5-S1 with severe foraminal stenosis, foraminal disc protrusion at L3-L4 with marked levoscoliosis, multilevel degenerative spondylosis, lateral and foraminal disc herniations at L4-L5 and chronic denervation of her lower extremities. (R. 237, 248.) On April 28, 2007, an MRI study indicated "[d]egenerative changes of the cervical spine." (R. 231.) Katara noted in July

2007 that Gallo was "unable to work secondary to [her] pain," (R. 229), and prescribed several pain medications, including Lyrica and Neurontin. However, Gallo had adverse reactions to the drugs and could not continue to take them.

Gallo also sought treatment from specialists and physical therapists. In January 2006 she was examined by Dr. Robert E. Lutnick at Eastern Niagara Radiology and diagnosed with "levo-rotary scoliosis in the mid-lumbar spine with degenerative narrowing of the L5-S1 interspace." (R. 197.) In July 2006 she saw Dr. Timothy Collard at Excelsior Orthopedics, who diagnosed her with chronic lumbar back pain, degenerative disc disease of the spine and lumbar spine scoliosis. That month she underwent an MRI scan which indicated marked degeneration of the L5-S1 disc, severe foraminal stenosis, mild spondylosis at L2-L3, L3-L4 and L4-L5 with foraminal protrusion. (R. 272.) Between January 2007 and March 2007 Gallo made 14 visits to the Pocono Balance & Dizziness Center, where she was diagnosed with "cervical and lumbar myofascial pain [and] radiculopathy." (R. 198.) The physical therapy was ineffective and had no impact on her pain level. (*Id.*) In May 2007, on determining that Gallo's condition would not improve with physical therapy and that she could not tolerate long-term prescription pain management, Dr. Katara referred her to Dr. Martin Camins, a neurosurgical specialist, for a surgical evaluation. Camins reported that Gallo suffered from foraminal stenosis, "significant" spondylosis, multiple disc herniations at L3, L4 and L5, and osteophytes within the L5 neuroforamen. He concluded that she was not a candidate for surgery, and recommended she pursue "all conservative measures." (R. 226.)

Gallo sought mental health treatment in March 2007 from Dr. William Van Meter, a psychologist. She reported feeling very depressed and crying frequently. She also

reported that she had family problems and had trouble sleeping. She was diagnosed with major depressive disorder and referred to a psychiatrist for medication. (R. 222-24.)

In May 2008, Gallo was in a car accident that aggravated her injuries. The doctor who treated her after the accident noted that she suffered from sciatica that had been made worse by the accident, as well as cervical strain with sprain and fibromyalgia. The doctor also noted tenderness and spasm in her paraspinal muscles along the cervical spine and upper back, multiple trigger points in her upper back and lower back tenderness with trigger points across her lower and mid back. (R. 296.)

Prior to Gallo's hearing, Dr. Sidney Segal, a state agency review psychiatrist, reviewed Gallo's records but did not personally examine her. He concluded that she had depressive and anxiety disorders, and found that she was mildly impaired in daily living, social functioning and concentration. (*See* Exhibit 11F, R. 283 (Report of Dr. Sidney Segal).) She also underwent a physical examination by Dr. Sethuraman Muthiah, the examining source of record. Muthiah drafted a report and completed a questionnaire outlining Gallo's residual functional capacity ("RFC"). Muthiah concluded that Gallo could stand and/or walk three hours during an eight-hour workday, had no limitation in sitting, and had no postural or environmental limitations. He also concluded Gallo could lift and carry up to 20 pounds. (R. 275.)

Olan Dodd, a vocational expert, was asked to opine at Gallo's hearing on whether a hypothetical individual limited to performing sedentary work and requiring a sit/stand option would be able to perform Gallo's past work. He said that such a person would not be able to perform her past work, but that she would be able to perform other forms of sedentary work such as non-emergency dispatcher. (R. 50.) When asked whether the same hypothetical person would be able to work if she were required to lie down six times during a work day, he

responded that "that would be too frequent, too extensive a time to complete normal work tasks. They may get a job, but they're not going to keep a job." (R. 51.)

DISCUSSION

A.  *The Standard of Review*

To be found eligible for disability benefits, Gallo must show that, "by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* § 423(d)(2)(A).[2] On review, the question presented is whether the Commissioner's decision to deny benefits is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (*per curiam*). In deciding whether the Commissioner's conclusions are supported by substantial evidence, a reviewing court must "first satisfy [itself] that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the Act.'" *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)).

The Social Security regulations direct a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe

---

2. Work may be substantial even if it is not full-time or if it generates less income or carries less responsibility than previous employment. 20 C.F.R. § 404.1572. Work is gainful "if it is the kind of work usually done for pay or profit, whether or not profit is realized." *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id.*

6

> impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

*DeChirico*, 134 F.3d at 1179-80 (2d Cir. 1998) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof in the first four steps, the Commissioner in the last. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

B.   *Analysis*

The ALJ followed the five-step procedure outlined above. He determined that Gallo had not engaged in substantial gainful activity since June 15, 2005, and that she was unable to perform past relevant work through the date on which she was last insured (December 31, 2007). (R. 14.) He determined that she had "severe impairments" of the musculoskeletal system, specifically scoliosis of the spine, degenerative disc disease of the lower spine, lumbar disc herniations, lumbar radiculopathy, degenerative disc disease of the cervical spine, lumbar spinal stenosis, cervical muscle pain, and fibromyalgia. (*Id.*) He evaluated her impairments under Section 1.00 of the Listing of Impairments for disorders of the musculoskeletal system, 20 C.F.R. § 404 subpt. P. app. 1, and found that these conditions did not meet the criteria for such disorders under either 20 C.F.R. § 404.1525 or 20 C.F.R. § 404.1526. (R. 19.) Because her previous relevant work experience would not allow for a sit/stand option, the ALJ determined

7

that Gallo was without the residual functional capacity to perform the duties of an administrative assistant. (*Id.*) At the fifth step, the ALJ concluded that Gallo was not disabled under the Social Security Act because she retained the residual functional capacity to perform a limited subset of the statutory range of "sedentary work." (R. 23-24.) *See* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.").

    1.    *Procedural flaws in the ALJ's Decision*

        a.  *Failure to develop the record*

An ALJ conducting an administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits. *See* 20 C.F.R. § 416.1400(b) (expressly providing that the Social Security Administration "conduct the administrative review process in an informal, nonadversary manner"); *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...."); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Gallo correctly argues that the ALJ failed to develop the record enough to show that his decision was supported by substantial evidence.

First, the ALJ held that the objective evidence indicated Gallo's condition was not disabling. However, he did not specify the objective evidence to which he referred. (R. 23.) Indeed, the weight of the evidence points in the opposite direction: Gallo presented records of years of diagnostic tests and doctor's visits, all of which objectively indicated severe and disabling injuries. She testified to constant and debilitating pain, leading to both a physical and a

8

mental inability to do any sort of job. The ALJ also had a report from Gallo's treating physician indicating that she suffered from debilitating pain as a result of her medical conditions.

Second, the ALJ failed to investigate areas where the record exposes conflicts of fact. For example, Dodd, the vocational expert, stated that an individual who fit Gallo's version of her capabilities (requiring an option to lie down several times a day for 15 minutes at a time) would be unable to perform even sedentary work, but that an individual who fit Dr. Muthiah's description of Gallo's capabilities (requiring only a sit/stand option) would be able to perform a sedentary job. The ALJ did not mention the conflict in his opinion, and made no effort to determine which description was correct. As another example, there is substantial ambiguity with regard to the timing of Gallo's loss of insurance -- at various points the record indicates that her insurance expired in 2006 or 2007. (*Compare, e.g.*, R. 171 *with* R. 46.) The exact dates on which she was insured may bear on Gallo's credibility to the extent the ALJ finds her less credible because she failed to fill prescriptions or pursue aggressive treatments. This ambiguity should have been clarified at the hearing.

      b. *Failure to observe the Treating Physician Rule*

Under the regulations, a treating physician's opinion about a claimant's impairments is entitled to "controlling weight" if it is "well [] supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). The Commissioner must set forth "good reasons" for refusing to accord the opinions of a treating physician controlling weight. He must also give "good reasons" for the weight actually given to those opinions if they are not considered controlling. 20 C.F.R. § 404.1527(d)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided

9

'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician."). When the Commissioner does not give a treating physician's opinion controlling weight, the weight given to that opinion must be determined by reference to: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. § 416.927(d)(2)).

The ALJ's failure to give Dr. Katara's opinion controlling weight was erroneous. Katara saw Gallo regularly over an extended period of time, and was thus in the best position to make an assessment of Gallo's residual functional capacity. Katara extensively charted Gallo's symptoms and repeatedly concluded that she was "temporarily totally disabled." (R. 243.) The ALJ criticized these reports as drawing conclusions reserved to the ALJ. But even if the ALJ chose to disregard Katara's opinion as to Gallo's disability status as encroaching upon the ALJ's own duties (R. 23), he should have accepted the underlying medical observations that gave rise to Katara's determination that Gallo was temporarily totally disabled, or offered an explanation as to why he chose not to do so. Instead, the ALJ summarily discarded Katara's opinion as against the weight of the evidence. This was an improper application of the treating physician rule. On remand, the ALJ should explain in detail the areas in which he found Katara's opinion to be against the weight of the evidence.

The ALJ's failure to describe what weight, if any, he chose to give Dr. Katara's observations was also erroneous. If he chose not to accept Katara's observations as controlling, he should have undertaken the analysis required by *Schaal* in order to determine the weight Katara's opinions would be given. Instead, he asserted without explanation that "Dr. Kat[a]ra's statement [that Gallo was disabled secondary to her disc herniations and pain] is inconsistent with the evidence of record." (*Id.*) The ALJ's failure to make a finding on the weight to be given to Katara's opinion was also a violation of the treating physician rule and necessitates a remand. *See Schaal*, 134 F.3d at 503 ("Because it is not entirely clear what legal standard the ALJ applied, and because we find that the ALJ . . . failed to follow SSA regulations requiring a statement of valid reasons for not crediting the opinion of plaintiff's treating physicians, we conclude that a remand is necessary in order to allow the ALJ to reweigh the evidence.").

Also problematic is the ALJ's failure to procure an RFC assessment from Katara. The ALJ rejected Katara's opinion that Gallo was disabled on the ground that the ultimate question of disability is reserved to the Commissioner. At the very least, fairness -- not to mention the duty to develop the record -- required the ALJ to inquire of Katara the bases of his conclusion. But rather than requesting an RFC assessment from Katara, or indeed from any of the numerous specialists whose reports and notes are contained in the record, the ALJ sought the necessary questionnaire from Dr. Muthiah, an internist who had examined Gallo only once. (*See* Exhibit 10F, R. 273 (Report of S. Muthiah, M.D.).) The ALJ explained the decision to credit Muthiah's opinions regarding Gallo's residual functional capacity in a single sentence: "The opinions of Dr. Muthiah are entitled to significant weight as they are supported by the entire evidence of record." (R. 23.) This is no explanation for the ALJ's failure to request such an

opinion from Katara, or to request from Katara explanations of areas in which Katara's opinions might have deviated from the evidence of record.

The ALJ's failure to properly apply the treating physician rule warrants remand. On remand, the ALJ should consider Dr. Katara's opinion, determine whether Katara's opinion is entitled to controlling weight, and, if not, set forth comprehensive reasons explaining the weight to which it is entitled. If appropriate, the ALJ should develop the record by seeking a RFC assessment from Katara, as well as further medical opinions concerning the effect of work-related stress on Gallo's back, neck, and psychiatric conditions.

### c. *No proper basis for adverse credibility finding*

In resolving whether a plaintiff is disabled, the Commissioner must consider subjective evidence of pain or disability testified to by the plaintiff.[3] The ALJ has discretion to evaluate a plaintiff's credibility, and "[i]f the ALJ's decision to ignore plaintiff's subjective complaints of pain is supported by substantial evidence, then this Court must uphold that determination." *Aronis v. Barnhart*, No. 02-CV-7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003). However, the ALJ must set forth his reasons for discounting a plaintiff's subjective complaints with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Miller v. Barnhart*, No. 02-CV-2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003). A dispositive reason for the ALJ's denial of benefits was his opinion that Gallo's testimony about the persistence and limiting effects of her symptoms was not credible. (R. 22.) As explained below, I conclude that his adverse credibility determination is not supported by substantial evidence.

---

3. *See Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001) ("Statements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged."). The medically determinable impairments that produce Gallo's pain and disability are well documented in the physicians' reports she submitted.

In making the finding that Gallo has no more than mild impairment in social functioning, the ALJ noted that "[a]t the hearing, the claimant testified that she goes shopping with her father every one or two weeks. She also reported talking to her aunt 'one hundred times a day.'" (R. 18-19.) The government wrote in support of its motion to uphold the ALJ's determination that "[d]uring the March 2, 2009 hearing, plaintiff testified that she chatted on the phone and on the computer with friends and family, especially her aunt, on a daily basis. . . . She went grocery shopping with her 80 year-old father for about an hour every week or every other week." (Government's Memorandum of Law (Gov't mem.), at 2.) In making the finding that Gallo has no more than mild impairment in conducting the activities of daily living, the ALJ noted that "[s]he reported watching television and doing crafts (decoupage). . . . She also enjoys looking up information on the internet concerning crafts. She looks up new ways of doing things in order to possibly teach one of her children." (R. 18.) The government argued similarly: "She passed the time watching television, reading books or the news on the internet, and doing crafts, specifically decoupage." (Gov't mem. at 2.) The ALJ's opinion makes it clear that he interpreted each of these points to undermine Gallo's testimony about her mental and physical condition.

Both the ALJ and the government have taken Gallo's statements out of context. Regarding shopping with her father, she stated: "My dad, who's going to be 80 years old, will, you know, say to me you need to go grocery shopping, and he'll come pick me up and he'll take me to the store, you know. . . . I'm embarrassed to go shopping . . . . And I hardly go shopping anymore unless I have to for necessities, you know, because I can't trust my father to get the right foods and whatever." (R. 39, 41.) Regarding talking to her aunt, she testified: "[M]y aunt . . . calls me 100 times a day to make sure I'm ok. Then she tries to tell me about her life, and

13

what's going on in yours, same thing, you know. Sil, you've got to get out some, Sil you've got, and I don't want to." (R. 41.) Regarding crafting, she stated "I used to do crafts, a lot of crafts, very intricate crafts. Can't do that anymore. So I look up new ways on how I think something could be done, maybe I could teach one of my children." (*Id.*) Rather than undermining Gallo's claims of pain, the testimony cited by the ALJ and the government, when viewed in their true context, support her overall testimony about the impact of her pain on her daily living skills.

The ALJ also stated that Gallo's physicians' choice to treat her conditions "conservative[ly]" undermined her statements about the severity of her pain. (R. 22.) However, the record is clear that she discussed more aggressive treatments with her doctors. (*See* R. 225-26, 229 (records of surgical evaluation).) The ALJ made no inquiry into why she was determined not to be a candidate for surgery. The government argues that the "conservative treatment" referred to her use of over-the-counter medication rather than narcotic pain relief. But the record is clear that she did seek narcotic pain relief from her then-primary physician, Dr. Gunn, and was denied because "given the fact that she has had low back pain for 21 years . . . [Gunn] could see this being a long term medication." (R. 182; *see also* R. 179, classifying her conditions as "unlikely to be resolved."). The ALJ, perhaps having overlooked this part of the record, made no inquiry into whether her use of over-the-counter medication could have been for reasons other than lack of severe pain -- for example, perhaps the choice of medication was at her request, in order to avoid the co-payments that she had already testified to an inability to afford, or in an effort to avoid a medication that would trigger her well-documented allergies.[4] Gallo or her doctors must be permitted the opportunity to explain their course of treatment.

---

4. Gallo suffers from a number of allergies that include codeine, Novocain, and Lyrica. (R. 235-36.) During at least part of her course of treatment, she was determined to be "not a candidate for pain management," as "she is unable to take many of the medications and she cannot take any epidural injections because of her allergies to Novocain." (R. 234, 236.)

14

The ALJ further pointed to Gallo's failure to fill her Daypro prescription within three days of receiving the prescription. However, the ALJ made no effort to determine why she failed to immediately fill the prescription; nor is there any indication in the ALJ's opinion as to whether she filled the prescription after January 19, 2007. Three days' delay in filling a prescription is hardly an indication that Gallo's description of her pain is not credible.

On remand, the ALJ is instructed to inquire further into the issues bearing upon Gallo's credibility, including (but not limited to) the dates on which she was insured, the extent of her ability to perform the activities of daily life, any financial or other reasons that she did not fill prescriptions for pain medication while insured, and the financial or other reasons she never pursued more than "conservative treatment." Also, in fairness to Gallo, if there are facts in the administrative record that appear to the ALJ to undermine Gallo's credibility (*e.g.*, the failure to fill a prescription in less than three days), the ALJ should ask her about such facts before deciding whether she is being truthful. Perhaps there are explanations the ALJ will find credible.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is denied, Gallo's is granted, and the case is remanded to the Commission for further proceedings.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 12, 2010
      Brooklyn, New York